**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-23-00031-001-TUC-JCH (BGM) |
| Plaintiff, | **ORDER** |
| v. | |
| Edward Kwaku Boakye, | |
| Defendant. | |

Before the Court is Defendant Edward Kwaku Boakye's Appeal from Detention ("Motion"). Doc. 29. The government opposes the Motion. Doc. 38. Defendant appeals his December 2022 detention order and requests to be released pretrial. For the following reasons, the Court denies the Motion and affirms the detention order.[1]

## I.   Background

### A. Indictment

By Indictment, the government charged co-defendants Edward Kwaku Boakye and Ayisha Hassan with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Doc. 11. According to the facts alleged in the criminal Complaint, Doc. 3, Defendant and his co-defendant laundered fraud proceeds from victims in the United States to individuals in Ghana. Doc. 38 at 1; *see generally* Doc. 3. Over a two-year period approximately $522,268.90 in fraud proceeds passed through accounts controlled by the co-defendants. Doc. 38 at 1. One victim, Victim #2, allegedly sent over $5 million dollars to different people (including Defendant) as part of an inheritance scam. Doc. 38 at 2.

---

[1] This matter is appropriate for resolution without oral argument. *See* L.R. 7.2(f).

Defendant told FBI agents that he mailed a gold bar to Victim #2 and spoke to Victim #2 via telephone in his efforts to deceive Victim #2 into claiming a multi-million-dollar inheritance. *Id.* As part of his efforts, Defendant indicated that he accepted money from multiple individuals and was to receive a 10% commission for receiving these funds on behalf of an international contact from either Ghana or Nigeria. *Id.* A jury trial is set for June 6, 2023. Doc. 31.

### B. Procedural History

On December 7, 2022, the FBI executed an arrest warrant on Defendant in Wilmington, Delaware. Doc. 16. On the same day, Defendant made his Initial Appearance in the District Court of Delaware and was ordered temporarily detained. *See United States of America v. Edward Kwaku Boakye*, 1:22-MJ-437-UNA-1, Doc. 5 (D. De. December 7, 2022). Pretrial Services in Delaware recommended Defendant's detention. *See* Doc. 39. On December 12, 2022, United States Magistrate Judge Jennifer L. Hall held a Detention Hearing and ordered Defendant detained pretrial. *Id.* at Doc. 6. According to the government,[2] the Court found: (1) "strong evidence" of guilt that the Defendant accepted $400,000 from one victim, assured that same victim via telephone that the money was for the gold, and delivered a bar of gold to that victim; (2) defendant is a citizen of Ghana, has no criminal history, is a Legal Alien Permanent Resident of the United States, has a mother in the United States, and had a roommate in Delaware for some indeterminable period; (3) Defendant did not take an opportunity to flee after talking to the FBI in July 2022, and when informed of his arrest warrant in December 2022, he surrendered himself to authorities; (4) Defendant is not a danger to the community and the allegations do not involve a violent crime; (5) Defendant lacked significant ties to Delaware, there was no reasonable way to track Defendant's whereabouts, his current housing was unclear, he maintained significant foreign contacts and contacts located outside of the district; and (6) Defendant's charges related to schemes involving international transfers of significant sums of fraud proceeds. *See* Doc. 38 at 3–4. Because

---

[2] Both parties reference the audio recording, but neither provided a transcript or copy.

Defendant lacked a release plan Judge Hall found no set of reasonable conditions would support Defendant's release. *Id.* at 4. Judge Hall committed Defendant to the District of Arizona and ordered the U.S. Marshal to transport the Defendant. *United States of America v. Edward Kwaku Boakye*, 1:22-MJ-437-UNA-1, Doc. 7 (D. De. December 12, 2022).

On January 19, 2023, Defendant made his Initial Appearance in the District of Arizona before Magistrate Judge Leslie A. Bowman. Doc. 22. Arizona Pretrial Services reiterated Delaware's recommendation for Defendant's continued detention. Doc. 10 ("Pretrial Services believes the defendant poses a risk of nonappearance based on his lack of legal status in the United States. The Immigration and Customs Enforcement Agency considers this defendant deportable.") At the Initial Appearance, the government argued that a motion for detention reconsideration must be directed to the District Judge. Doc. 38 at 4. Judge Bowman agreed and vacated the Detention Hearing noting that "new factors would be necessary to re-raise the issue with the Magistrate Judge or that an appeal would need to be made to the District Judge." *Id.*

On February 6, 2023, Defendant filed a motion to reconsider detention with the Magistrate Judge offering purportedly new factors not considered by Judge Hall. *See* Doc. 25. Magistrate Judge Bruce G. Macdonald held a hearing on Defendant's motion on February 21, 2023. Doc. 28. Judge Macdonald denied the motion. *See* Doc. 28. Defendant filed this appeal on February 27, 2023. Doc. 29.

## II.    Jurisdiction

Under 18 U.S.C. § 3141, the magistrate judge before whom the defendant is brought is required to order that such person be detained or released pending judicial proceedings. Such order is subject to review and appeal under § 3145. The district judge assigned to the matter in the district where the prosecution is pending, not where the arrest occurred, is the only court with authority to review a magistrate judge's order of release or detention under § 3145(b). *United States v. Evans*, 62 F.3d 1233–34 (9th Cir. 1995) (holding that review of a magistrate's detention decision in the arresting district is to be made by the district court judge of the charging district).

Here, Defendant moves to review: (1) his detention order issued by U.S. Magistrate Judge Jennifer L. Hall in the District Court for the District of Delaware (*see United States of America v. Edward Kwaku Boakye*, 1:22-MJ-437-UNA-1, Docs. 5,6 (D. De. December 12, 2022)); (2) Magistrate Judge Leslie A. Bowman's order affirming the detention order (Doc. 22); and (3) Magistrate Judge Bruce G. Macdonald's denying Defendant's motion for reconsideration of detention (Doc. 28). *See* Doc. 29 at 1. Because this Court is the only court with authority to review a magistrate judge's release or detention order, jurisdiction is proper. *See United States v. Cisneros*, 328 F.3d 610 (10th Cir. 2003) (finding it was error to permit a magistrate judge in the court of original jurisdiction to review the release order issued by a magistrate judge in the arresting district because an appeal from release order "should be considered and ruled upon in the first instance by a district judge in the court of original jurisdiction[.]") Furthermore, this Court will treat Defendant's Motion as an appeal from Judge Hall's detention order.[3]

### III. Legal Standard

A district court reviews a magistrate judge's detention order de novo. *See United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The Bail Reform Act mandates pretrial release unless the court concludes that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e). Probable cause to believe that the defendant violated the Controlled Substances Act punishable by at least 10 years in prison raises the presumption that no conditions could reasonably assure the defendant's appearance. 18 U.S.C. § 3142(e)(3)(A)–(B). This presumption shifts the burden of production to the defendant, but the burden of persuasion remains with the government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

As many circuits recognize, the "defendant's burden of production is not heavy, [but] he must introduce at least some evidence." *U.S. v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (internal quotations omitted); *see also U.S. v. Stricklin*, 932 F.2d 1353, 1355 (10th

---

[3] Defendant's Motion does not explicitly invoke § 3145(b) or (c). *See generally* Doc. 29.

Cir. 1991) (same "some evidence" standard); *U.S. v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) (same); *U.S. v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (same). That is, the defendant must offer at least some evidence "or basis to conclude that the case falls 'outside 'the congressional paradigm' giving rise to the presumption." *U.S. v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018) (quoting *Stone*, 608 F.3d at 945–46). Even when rebutted, the presumption against release remains and is to be considered alongside all other relevant factors. *Hir*, 517 F.3d at 1086.

If a defendant succeeds in rebutting a presumption of flight risk or dangerousness, the Court then considers four factors in determining whether to detain or a release the defendant:

(1) the nature and circumstances of the offense charged…;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including—
    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....

*Id.*; 18 U.S.C. § 3142(g)(1)–(4).

The government must show the defendant poses a flight risk by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The government must show the defendant poses a danger to the community by clear and convincing evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). Any doubts about the propriety of release should be resolved in Defendant's favor. *Id.* at 1405.

## IV.    Analysis

Defendant seeks pretrial release arguing that he lacks a criminal record and is neither a danger to the community nor flight risk as evidenced by his surrender and cooperation

with FBI agents. Doc. 29 at 2–3. Defendant further indicates that he has housing available with his mother in White Plains, New York, or with Mr. Arthur Vareny in Phoenix, Arizona. *Id.* at 2. Defendant contends that he has work available with both Amazon and /or Lyft in New York and Arizona. *Id.* Defendant does not challenge Judge Hall's factual findings. *See id.*

### A. Bail Reform Act Factors

#### 1. Nature and Circumstances of the Offense

Defendant is charged with conspiracy to commit money laundering, a non-violent, non-presumption offense, in violation of 18 U.S.C. § 1956(h). Doc. 11. The Court may consider the possible punishment and the incentive to flee associated with a defendant's criminal exposure. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). If convicted, Defendant faces a 20-year maximum sentence and deportation under 8 U.S.C. § 1127(a)(2)(B)(iii). Doc. 38 at 8, 12. Here, the nature and circumstances of the offense favor detention as the possible punishment provides an incentive to flee. This factor weighs in the government's favor.

#### 2. Weight of the Evidence Against Defendant

The weight of the evidence is the least important factor that the Court considers and is not a pretrial determination of guilt. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir.1985); *Townsend*, 897 F.2d at 994. Here, the government contends that the evidence will likely support conviction based on Victim #2's interview, interviews with other victims, and an FBI analysis showing approximately $700,000 in fraudulent proceeds passed through accounts controlled by the Defendant and co-defendant. Doc. 38 at 9. Moreover, Defendant made statements demonstrating his participation in the fraud scheme and, arguably, his culpability. *Id.*at 10. This factor weighs in the government's favor.

#### 3. Defendant's History and Characteristics

Defendant is a 26-year-old male who was born in Ghana. Doc. 39 at 1. In 2014 or 2015 he obtained legal permanent residency in the United States. Doc. 38 at 11. Approximately 3–4 years ago Defendant traveled to Ghana, where his father lives, and

traveled to Panama in 2021. *Id.* at 12. His mother resides in White Plains, New York. *Id.* at 11. Defendant denies having a spouse or children and claims to be in a three-year relationship with a woman in New Jersey. Doc. 39 at 2. He was unable to provide the woman's last name or her address for verification. *Id.*

Defendant's housing situation is unclear. For the past six years he claimed residence at Unionport Road – a Bronx, New York address and indicated he "sometimes" resides with George Oteng Asiedu in Delaware. *Id.* In a letter dated January 30, 2023, George Oteng Asiedu confirmed that Defendant lived with him in Delaware for an unspecified period, a fact also confirmed by Pretrial Services. *See* Doc. 39 at 2*; see also* Doc 25-1, Letter from Mr. Asiedu ("Boakye lived with me at the above-mentioned address and all the years he has been hardworking"). Although Defendant advised that he resides at the Unionport residence with his uncle, Nene Agyman, he was unable to provide his uncle's contact information for verification. Doc. 39 at 1. According to Defendant's stepfather, Defendant's mother retrieves Defendant's mail for him at the Unionport residence. Doc. 38 at 11. It is unclear whether Defendant has ever lived with his mother in White Plains, New York. *Id.* Further, Defendant contends that he has available housing with Mr. Arthur Vareny in Phoenix, Arizona and offers a character letter from Mr. Vareny. Doc. 29 at 2. Although Mr. Vareny indicates that he has known Defendant for ten years, he does not explain the nature of their relationship, and he has not been vetted by Pretrial Services. *See* Doc. 25-1 at 10. In short, whether Defendant will have suitable housing if released remains unclear because Defendant has not identified verifiable housing solutions or third-party custodians that appear acceptable to the Court. But even if Defendant had suitable housing, it seems unlikely he could overcome other factors demonstrating flight risk.

Defendant's current employment is also unclear. The Motion asserts that "[Defendant] has work available with both Amazon and Lyft in both [Arizona and New York]" but offers no supporting documentation from a *current* supervisor or employer. *See* Doc. 29 at 2–3. Defendant offers a W2 from 2020 (reporting $20,880.06 in wages), a 1099 Form from 2021 (reporting $1,856.11 in compensation), and a 2021 Gross Earnings

Statement from Lyft (reporting $13,840.87 in gross earnings before expenses and fees). *See* Doc. 25-1 at 11–13. He offers no similar documentation for 2022. Moreover, Defendant self-reported earning $6,250 in monthly income to Pretrial Services in Delaware specifying that he earned $6,000/month from his current employment as an Amazon delivery person and $250/month reported from the sale of sneakers and clothing. Doc. 39 at 2. Defendant's implied yearly salary of $72,000, without further documentation, is implausible.

Defendant has no criminal history, no allegations of criminal activity after October 2020, and no attempts to flee. Doc. 29 at 2. The government argues, however, that Defendant's international ties, history of international travel, unclear employment, tenuous living situation, and unclear risks derived from Defendant's reported financial information indicate a flight risk supporting detention. Doc. 38 at 11–12. The government also contends that Defendant is deportable upon a felony conviction, under 8 U.S.C. § 1127(a)(2)(B)(iii), and this is an incentive for Defendant to flee the country. The Court agrees.

Taken together, this factor weighs in favor of detention, and the Court finds no reason to depart from Pretrial Service's repeated recommendations for Defendant's continued detention. Defendant fails to offer evidence verifying his employment or prospective housing. There remain questions regarding the validity of Defendant's self-reported employment, current income, and previous housing situation. Moreover, Defendant's significant foreign ties, allegations that significant fraud proceeds were transferred to Ghana and/or Nigeria and may be readily available, the possibility of unreported income, and the possibility of deportation, support an incentive to flee the United States and avoid prosecution in the face of the government's evidence. Thus, the government has shown by a preponderance of the evidence that there is a serious risk the Defendant will not appear.

### 4.  Dangerous Nature

The government does not contend Defendant is a danger to the community.

///

- 8 -

### 5.  Conditions of Release

A person facing trial is entitled to release under the least restrictive conditions that will reasonably assure the appearance of the person and should only be denied in rare circumstances. *Motamedi*, 767 F.2d at 1405.  A defendant must still be released if there are conditions of release that may be imposed to mitigate the flight risk or risk to the community. *See* 18 U.S.C. § 3142(e). Any doubts about the propriety of release should be resolved in the defendant's favor. *Motamedi*, 767 F.2d at 1405.

Here, the government has raised serious concerns underlying Defendant's risk of nonappearance including his international ties, lack of verifiable housing solutions, and unverified employment. In assessing nonappearance in January 2023, Pretrial Services issued a Supplemental Report reiterating their recommendation for detention based on a risk of nonappearance. Doc. 17 at 2 ("[Defendant] poses a risk of nonappearance based on his ties to a foreign country, his past foreign travel, his possession of a passport, and varying accounts of the defendant's living situation prior to his arrest, including potentially conflicting information."). Pretrial Services also reported, "[t]here is no condition or combination of conditions that can reasonably assure the appearance of the defendant in court or the safety of the community. Therefore, Pretrial Services respectfully recommends the defendant remain detained." *Id.* Defendant's Motion fails to adequately address the concerns raised by Pretrial Services or considered by Judge Hall in December. The Court is convinced that no condition or combination of conditions will reasonably assure Defendant's appearance.

///
///
///
///
///
///
///

**V.      Order**

For the reasons above,

**IT IS ORDERED DENYING** Defendant's Appeal. (Doc. 29.) Defendant shall remain detained pending trial.

Dated this 8th day of March, 2023.

Honorable John C. Hinderaker
United States District Judge